UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHLEEN DILLON,

       Plaintiff,

v.     Case No. 8:19-cv-1277-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

       Defendant.
                                       /

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 246-56). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 96-97, 119-20, 147-68). Plaintiff then requested an administrative hearing (Tr. 169-70). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 49-77). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 27-48). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 7-12, 243-45). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning October 24, 2015, which she later amended to October 29, 2015 (Tr. 30, 52-53, 246, 248). Plaintiff obtained a high school education (Tr. 287). Plaintiff's past relevant work experience included work as a nurse assistant and a medical assistant (Tr. 70-71, 287). Plaintiff alleged disability due to migraine headaches, back pain, hypertension, anxiety, and depression (Tr. 286).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2016 and had not engaged in substantial gainful activity since October 29, 2015, the amended alleged onset date (Tr. 32). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: lumbago; radiculopathy; migraine headaches, not intractable and without *status migrainous*; major depressive disorder; generalized anxiety disorder; and panic disorder without agoraphobia (Tr. 32-33). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 33). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff required a sit/stand option allowing her to briefly alternate between sitting and standing positions at 30- to 60-minute intervals throughout the workday, while still attaining the requisite amount of sitting and standing required of the light exertional category; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs and occasionally balance and stoop; could frequently kneel, crouch, and crawl; must avoid concentrated exposure to excessive vibration, as well as avoid all exposure to hazardous machinery and unprotected heights; and was limited to simple, routine, repetitive tasks in a low-stress job (which is defined as having only occasional decision-making, only

occasional changes in the work setting, only occasional in-person interaction with coworkers and supervisors, and no in-person interaction with the public, while also having no production rate or pace work comparable to that of an assembly line where one worker's pace affects the entire production process) (Tr. 34).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 35).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 41).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a sorter, routing clerk, and inspector (Tr. 41-42).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 42).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The SSA, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) improperly concluding that Plaintiff maintained the ability to perform the jobs of sorter and routing clerk without complying with Social Security Ruling ("SSR") 00-4p; and (2) improperly basing the decision on unreliable VE testimony, which was inconsistent with generally accepted governmental publications. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

    A.    **SSR 00-4p**

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At

this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citation omitted). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted); *cf.* 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3).

In doing so, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications[,]" including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor.[1] 20 C.F.R. §§ 404.1566(d), 416.966(d). An ALJ may also utilize the services of a VE or other specialist in making the determination at step five as to whether a claimant's work skills can be used in other work and as to the specific occupations in which such skills can be used. 20 C.F.R. §§ 404.1566(e), 416.966(e). A VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ consults a VE. *See id.* at 1243.

Over the years, issues have arisen about the ALJ's duty to investigate and develop an adequate factual record to support a disability determination in cases where VE testimony is contradicted by the DOT, upon which the SSA frequently relies. *See, generally, Washington*, 906 F.3d at 1355-61. With the issuance of SSR 00-4p, the SSA offered its policy interpretation

---

[1] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

regarding the issue. *See id.* at 1356. Under SSR 00-4p, when an apparent unresolved conflict exists between VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at * 2 (Dec. 4, 2000). The ALJ must inquire, on the record, whether a conflict exists. *Id.* If a conflict exists, the ALJ must resolve the conflict by determining whether the explanation provided by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the information contained in the DOT. *Id.* Reasonable explanations may include the availability of information about a particular job's requirements or about occupations not listed in the DOT but available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling. *Id.*

Recently, in considering the application of SSR 00-4p, the Eleventh Circuit concluded that ALJs maintain "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them." *Washington*, 906 F.3d at 1356. In carrying out that duty, the ALJ must do more than simply ask the VE whether his or her testimony is consistent with the DOT. *Id.* According to the Eleventh Circuit, when a conflict has been identified, SSR 00-4p requires the ALJ to provide a reasonable explanation for the discrepancy and to detail in the decision how the ALJ resolved the conflict. *Id.* The failure to do so means that the ALJ's decision, if based upon the contradicted VE testimony, is not supported by substantial evidence. *Id.*

SSR 00-4p thus imposes a duty on the ALJ to identify and resolve "apparent conflicts" between DOT data and VE testimony. *Id.* at 1362. Under this framework, an "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison

of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Here, in response to hypotheticals posed by the ALJ, the VE testified that a hypothetical individual with Plaintiff's limitations could not perform Plaintiff's past relevant work but could perform other jobs existing in significant numbers in the national economy (Tr. 70-75). Specifically, the VE testified that such a hypothetical individual could perform the following jobs: (1) sorter, DOT 529.687-186; (2) routing clerk, DOT 222.687-022; and (3) inspector, DOT 727.685-010 (Tr. 70-75). Following the recitation of the hypotheticals and the identification of jobs by the VE, the ALJ conducted the following exchange with the VE regarding the consistency between the VE's opinion and the DOT:

> Q  All right, has any aspect of your testimony -- and maybe it was the sit/stand and other things, had to depart from the [DOT]? If so, what did you rely on?
>
> A  The other issues would be the absences and the off[-]task times, and, again, I'm basing that on my experience in job placement over 14 years and seeing these jobs performed in the national economy.

(Tr. 75). In rendering the decision, the ALJ considered this testimony from the VE in concluding, at step five of the evaluation process, that Plaintiff retained the ability to perform the jobs of sorter, routing clerk, and inspector and thus was not disabled (Tr. 41-42).[2]

Plaintiff argues that the exchange between the ALJ and VE regarding conflicts with the DOT did not satisfy the ALJ's duty under SSR 00-4p because an apparent conflict exists between the ALJ's finding that Plaintiff could not perform a job requiring production rate or pace work comparable to that of an assembly line where one worker's pace affects the entire

---

[2] With respect to the routing clerk position, it appears the ALJ made a typographical error as to the DOT number, indicating that the routing clerk corresponded to DOT 222.687-186 (Tr. 42). The VE testified that the routing clerk position corresponded to DOT 222.687-022, which sets forth the description for the routing clerk position (Tr. 72). *See also* DICOT 222.687-022, 1991 WL 672133.

production process and the VE's identification of the jobs of sorter and routing clerk, which each involve use of a conveyor belt. Upon review of the DOT job descriptions for the jobs of sorter, routing clerk, and inspector, *all three* reference conveyors or conveyor belts. *See* DICOT 529.687-186, 1991 WL 674781; DICOT 222.687-022, 1991 WL 672133; DICOT 727.685-010, 1991 WL 679660. A reasonable comparison of the DOT with the VE's testimony thus suggests that a discrepancy exists. *See Washington*, 906 F.3d at 1365. Namely, as Plaintiff posits, the use of conveyors or conveyor belts appears to conflict with a limitation to jobs not requiring a production rate or pace work comparable to that of an assembly line where one worker's pace affects the entire production process. Although every job that involves the use of a conveyor or conveyor belt may not require the production rate or pace of work comparable to an assembly line, the record is unclear as to whether the jobs identified by the VE in this instance involve such work. Even if, after further investigation, it turns out that no conflict exists, resolution of such discrepancy is better left to the ALJ with input and insight from the VE.[3] *See, generally, Washington*, 906 F.3d at 1365. Accordingly, remand is warranted. Upon remand, the ALJ should address the apparent conflict between the VE's testimony and the DOT.

B.      **VE Testimony Regarding Job Numbers**

Plaintiff next contends that the ALJ erred by improperly basing the decision on unreliable VE testimony that was inconsistent with generally accepted governmental

---

[3] The Commissioner points to an unpublished opinion recently issued by the Eleventh Circuit in which the panel concluded that no apparent conflict existed between a limitation for no fast-paced assembly line jobs and a DOT job listing that did not discuss the pace of the job. *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (*per curiam*) (finding no apparent conflict between a limitation to no work in fast-paced assembly line jobs and a determination that the claimant could perform the work of a fruit distributor because the DOT does not discuss the pace of the fruit distributor job or the quantity of fruit the distributor must or should handle). Though unpublished opinions from the Eleventh Circuit may be cited as persuasive authority, they are not binding precedent. 11th Cir. R. 36-2. While the Court finds the analysis in *Christmas* persuasive, the Court concludes that remand is appropriate in this instance given the apparent conflict with *all* of the jobs identified by the VE.

publications. Namely, Plaintiff challenges the VE's testimony regarding the availability of 60,000 inspector jobs in the national economy (Tr. 75). Plaintiff argues that the number of jobs identified by the VE for the inspector position overinflates the number of jobs available for the inspector position identified by the VE – a plate slitter and inspector position, DOT 727.685-010. *See* DICOT 727.685-010, 1991 WL 679660. More narrowly, Plaintiff argues that the number of inspector jobs identified by the VE does not comport with the actual number of jobs for the specific plate slitter and inspector job indicated in the occupational employment statistics ("OES") set forth by the Bureau of Labor Statistics, a unit of the Department of Labor. Plaintiff asserts that the OES compiles data through a Standard Occupational Classification coding system ("SOC") rather than compiling job information using DOT numbers, and the SOC for inspector positions involves 74 separate DOT occupations employing 186,640 individuals, mostly in the fabricated metal product manufacturing industry. Based on those numbers, Plaintiff believes that the VE's testimony indicating 60,000 inspector jobs existed that a hypothetical individual with Plaintiff's limitations could perform was an aggregate number for all of the jobs which were similar but not specific to the plate slitter and inspector job.

During the administrative hearing, Plaintiff appeared with counsel (Tr. 27-48). As noted above, the ALJ utilized the testimony of the VE in determining Plaintiff's past relevant work, whether a hypothetical individual with Plaintiff's limitations could perform such past work, and, if not, whether a hypothetical individual with Plaintiff's limitations could perform other work (Tr. 70-75). The ALJ presented three hypotheticals to the VE and included a number of other questions regarding limitations and their effect on the availability of work the hypothetical individual could perform. When presented with an opportunity to ask follow-up questions of the VE, Plaintiff's counsel declined to do so (Tr. 75). Importantly, at the administrative hearing, Plaintiff did not address any discrepancies as to the number of jobs identified by the VE (Tr.

70-75). According to Plaintiff, however, the ALJ maintained an independent duty to question the VE regarding job numbers even when not alerted to the allegedly overestimated job numbers during the administrative hearing.

Understandably, counsel and claimants attend administrative hearings not knowing what jobs a VE will identify and not arming themselves with information regarding potential job numbers. The lack of knowledge and information may then be compounded by the VE not providing specific data in support of his or her conclusions. As the Supreme Court recognized, however, "[e]ven without specific data, an applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1156 (2019). In this instance, despite receiving an opportunity to do so, Plaintiff's counsel posed no questions and raised no issues with the VE during the administrative hearing. The Eleventh Circuit has repeatedly rejected similar arguments on appeal where the claimant failed to challenge a VE's job numbers at the administrative level and only presented the issue for the first time in federal court. *See, e.g., Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555-56 (11th Cir. 2019) (*per curiam*) (rejecting the plaintiff's argument that the SOC job numbers reported demonstrated that the VE's testimony was unreliable, where the plaintiff did not question the VE's qualifications and did not pose questions to the VE during the administrative hearing that addressed the concerns set forth on appeal regarding reliability, and therefore finding that the VE's testimony, based on the VE's own experience of having completed supervisor surveys for the specific jobs identified, his knowledge of the industry, and the DOT, constituted substantial evidence); *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781-82 (11th Cir. 2019) (finding that the VE's testimony constituted substantial evidence where the ALJ posed a hypothetical question to the VE that the plaintiff "did not object to" at

the administrative hearing and where the VE based her calculation of the number of positions the plaintiff could perform on her experience, expertise, and onsite job analyses, to which the plaintiff likewise did not object at the administrative hearing); *Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (*per curiam*) (finding that substantial evidence supported the ALJ's step-five finding where the plaintiff failed to challenge the hypothetical question posed to the VE, failed to challenge the VE's testimony that the plaintiff could perform the identified jobs, offered no evidence to the contrary during the administrative hearing, and raised no objection to the VE's qualifications, and the ALJ relied upon the VE's unrebutted testimony based on the VE's experience, practice, having completed onsite job analyses for the specific jobs identified, and the DOT).

Very recently, the Eleventh Circuit addressed whether substantial evidence supported an ALJ's conclusion that a significant number of jobs existed in the national economy that the claimant could perform, finding that the VE improperly relied on an incorrect SOC group and provided an overestimate of job numbers based on aggregate numbers for numerous DOT codes under one SOC group, thus rendering the VE's testimony unreliable. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020).[4] Plaintiff presents nearly identical arguments in this instance.[5] Unlike in the instant matter, however, in *Goode*, the claimant's counsel repeatedly

---

[4] Prior to the issuance of *Goode*, the Eleventh Circuit indicated in *Webster*, an unpublished opinion, that it "has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES" and that "the figures in the OES are not part of the SSA's regulatory scheme." 773 F. App'x at 556. Though unclear, reading the findings in *Goode*, a published opinion, together with the statements in *Webster*, it appears that, although the ALJ may not maintain an affirmative duty to address conflicts between VE testimony and the OES where no conflict is identified, the ALJ should, at the very least, consider conflicts between VE testimony and OES and SOC information where the claimant or counsel presents the issue during the administrative hearing.

[5] Notably, Plaintiff's counsel also represented the claimant in *Goode*.

questioned the VE regarding the flawed testimony and methodology during the administrative hearing, indicated that the testimony was unpersuasive and not credible, and attempted to obtain specifics only to be effectively cut off by the ALJ. *Id.* at 1279-80 & 1284 n.3. Notwithstanding, given the recent findings in *Goode* and the Eleventh Circuit's discussion therein regarding the difficulties with the DOT and the SOC, the issues presented by Plaintiff regarding job issues in this matter should be addressed by the ALJ upon remand. In making this finding, the Court does not suggest that remand should occur as a rule where the claimant or counsel fail to address the issue of job numbers during the administrative hearing. As discussed above, the case law seems to support the opposite conclusion. Rather, as the Supreme Court indicated in *Biestek*, a case-by-case approach should be taken when assessing VE testimony as such approach "takes into account all features of the [VE's] testimony, as well as the rest of the administrative record." 139 S.Ct. at 1157. Here, given that remand is warranted based on an issue relating to the VE's testimony, consideration of the SOC issue on remand is likewise warranted to ensure that the VE's testimony provides substantial evidence upon which the ALJ may rely.[6]

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

---

[6] Had Plaintiff only presented the SOC issue on appeal, the Court would likely reach a different result due to the lack of questioning of the VE during the administrative hearing.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of September, 2020.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record